UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES,

        Plaintiff,                  Case No. 1:06-cv-896

v.                                        Honorable Paul L. Maloney

BASIL WOLEVER et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On May 14, 2007, this Court ordered service of Plaintiff's complaint on Defendants Basil Wolever, Kacy Datema, Willie Smith, Brad Mowatt, Donald Mawer, and John Jaramillo. On July 6, 2007, Defendants Wolever, Datema, Smith and Mawer filed a motion for summary judgment (docket # 26) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket # 33) and an affidavit (docket #36) on or about July 20, 2007. On August 7, 2007, Defendant Mowatt filed a motion for summary judgment, adopting the brief and attachments presented by the other Defendants. Upon review, I recommend that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be denied.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues*

*of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **Facts**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Marquette Branch Prison, though the actions he complains of occurred while he was housed at the Ionia Maximum Facility (ICF).  In his *pro se* complaint, he sued numerous ICF employees, of whom Defendants Wolever, Datema, Smith, Mowatt, Mawer and Jaramillo remain.

According to the allegations of the complaint, on June 27, 2002, Plaintiff was placed in the Unit 2, B-wing shower.  Plaintiff was stripped and subjected to the strip search procedure, including "the bend and spread procedure."  Plaintiff alleges that he fully complied with the strip search.  At the end of the search, allegedly upon the order of Defendant Smith and without requesting Plaintiff to again bend and spread, Officers Mawer, Jaramillo, Carlisle, Powers and Mowatt used unnecessary and unjustified force to cuff Plaintiff and part his posterior, while Mowatt ran his hand between Plaintiff's buttocks and over his anus.  Plaintiff alleges that Defendants actions constituted both physical and sexual assault.

Plaintiff also alleges that, while he was being subjected to the strip search and physical assault, Defendants Datema and Wolever were in his cell destroying and disposing of his legal documents, law books, eye glasses and other personal materials. After being placed back in his cell, Plaintiff informed their supervisor, Defendant Mowatt, that his property had been taken and destroyed. Mowatt told Plaintiff, "I do not give a fuck, you should stop trying to litigate." Plaintiff alleges that, as the result of his property being destroyed, he was unable to litigate criminal and civil issues. He seeks compensatory and punitive damages.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

I.  MDOC Policy

MDOC Policy Directive 03.02.130 (effective November 1, 2000),[1] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ T. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ T, Y. The Policy Directive also provides the following directions for completing grievance forms: "The information provided shall be limited to the issue being grieved, and shall be as specific as possible. Information shall be confined to the form and shall not be written on the back, sides or margins of the form, or in the response area. Additional pages may be attached, if necessary" *Id.* at ¶ U. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ Y, Z.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ EE. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[1] The MDOC amended Policy Directive 03.02.130 on December 19, 2003 and again on July 9, 2007. However, the 2000 version of the policy directive was in effect at the time of the incident underlying the claims in the lawsuit and is the sole version relevant to the analysis contained in this recommendation.

*Id.* at ¶¶ T, GG.  The Step III form shall be sent within ten business days after receiving the Step II response.  *Id.* at ¶ GG.  The Director or designee is the respondent for Step III grievances.  *Id.* at ¶ HH.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ V.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension of 15 days . . . has been granted by the grievant."  *Id.*  In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶ II.

The grievance procedure provides for the placement on "modified access" of a prisoner or parolee who

> files an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or who files an unfounded grievance as set forth in Paragraph K, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 days.  If the prisoner or parolee continues to file such grievances while on modified access, the Warden or FOA Area Manager may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation.

*Id.* at ¶ JJ.  While a prisoner is on modified access, he may only obtain a grievance form through the Step I Grievance Coordinator.  *Id.* at ¶ MM.  The Grievance Coordinator will only provide a grievance form if he or she determines that the issue the prisoner wishes to grieve is grievable and otherwise meets the criteria of the grievance policy.  *Id.*  If a prisoner attempts to file a grievance using a form not provided by the Grievance Coordinator, the grievance will not be processed.  *Id.*

II.     Analysis

Defendants contend that Plaintiff has failed to exhaust his administrative remedies because no evidence exists that Plaintiff properly filed a grievance related to the incidents of June 27, 2002.  Defendants first assert that Plaintiff did not file a Step I grievance in June 2002.  In support of their contention, Defendants attach a log of grievances pursued through Step III by Plaintiff from March 12, 1999 through June 13, 2007.  The log includes grievance codes and findings (docket #27-3), and Defendants have attached a list of grievance code definitions (docket #27-4).  In addition, Defendants rely on the affidavit of Nancy Klinesmith, the Step I grievance coordinator at ICF.  (Docket #27-5.)  Klinesmith avers that she has searched the grievance records maintained by the facility and finds no record of a Step I grievance regarding any assault or property destruction arising out of an incident on June 27, 2002.  (Docket #27-5, ¶3.)  She reports that ICF records contain a memorandum sent to Plaintiff on August 9, 2004, which acknowledges receipt of two envelopes containing 18 grievances but declines to process those grievances because Plaintiff was on modified access and the grievances were untimely, duplicative or contained multiple issues.  According to Klinesmith, none of the grievances referenced in the August 9, 2004 memorandum related to an incident occurring on June 27, 2002.  (Docket #27-5, ¶4.)

Defendants also assert that the grievances attached to Plaintiff's complaint fail to demonstrate proper exhaustion.  On May 4, 2004, Plaintiff filed two grievances directly to Step III.  The first, Step III Grievance No. 159308, 28e, complained about the sexual and physical assault on June 27, 2002.  (Compl., Ex. C.)  The second, Step III Grievance No. 159322, 28e, complained about the property theft and destruction.  (Compl., Ex. D.)  Both Step III responses declined to address the grievances because they were untimely and Plaintiff had not provided a valid reason for

7

the delay. The responses referred Plaintiff to Step I if he wished to process the grievances. Because the grievances were rejected as untimely, Defendants assert that they did not properly exhaust Plaintiff's claims. For all these reasons, Defendants contend that they have met their burden of proving that Plaintiff failed to properly exhaust his available administrative remedies.

I agree that the May 4, 2004 grievances failed to properly exhaust Plaintiff's claims, as they were rejected as untimely. It is equally true that no genuine issue of fact exists on Defendants' claim that Plaintiff failed to file any other grievance regarding his claims or pursue it through Step III. Defendants, however, have failed to demonstrate that Plaintiff failed to exhaust those administrative remedies available to him at the time of the incident in question.

Plaintiff alleged in his complaint and reiterated in his affidavit filed in response to Defendants' motions that he was unable to file a timely grievance because he was on modified access at the time of the incidents underlying his claim. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ JJ. Indeed, Plaintiff makes very specific allegations and averments about his futile attempts to file a grievance. Those allegations, if true, would excuse the failure to exhaust because the administrative process was not "available" to Plaintiff inasmuch as he was denied a grievance form. *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of "available" remedies). According to the complaint and affidavit, within a "couple of days" of the incident, Plaintiff requested a first-step grievance from the grievance coordinator. (Compl., p. 2a, docket #1; Aff. ¶5, docket #36.) That request was denied with a response stating, "This incident is being investigated by R. Groves, request denied." (Compl., p. 2a, docket #1; Aff. ¶5, docket #36.) Plaintiff continued to make attempts to file a grievance from July 2002 through April 2004. (Compl., p. 2a; Aff. ¶¶6-7.) On May 4, 2004, because he had been unsuccessful in his attempts, he mailed his grievances with

8

fifteen other grievances to Sandra Girard at Prison Legal Services, Inc., requesting that she forward the seventeen grievances to the Director's office. (Compl., p. 2a.)

Defendants fail entirely to respond to Plaintiff's allegations and averments. Their submissions on the motion for summary judgment make no references to Plaintiff's attempts to obtain grievances. Plaintiff's averments create a genuine issue of material fact on the question of whether he properly exhausted all remedies available to him.

## Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket ##26, 43) be denied.

Date: March 3, 2008               /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).